### CINCINNATI & SUBURBAN BELL TELEPHONE CO., Plaintiff-Appellee, v. CINCINNATI (CITY), Defendant-Appellant.

Ohio Appeals, First District, Hamilton County.

No. 7037. Decided January 10, 1949.

Frost & Jacobs, Carl G. Werner, Cincinnati, for plaintiff-appellee.

Henry M. Bruestle, Robert E. Steman, William A. McClain, Cincinnati, for defendant-appellant.

**OPINION**

By ROSS, J.:

This is an appeal on questions of law from a judgment of the Common Pleas Court of Hamilton County in favor of the plaintiff, rendered upon a motion of the plaintiff for judgment non obstante veredicto in favor of the defendant.

The action was brought by plaintiff to recover for damages to its conduits sustained when the defendant, in repairing a break in a water line in a street in the City of Cincinnati, broke through the conduits and cut the telephone cables contained therein.

The answer was in effect a general denial.

The plaintiff alleged four specifications of negligence: (1) that the defendant failed to observe the telephone company manholes, from a location of which the City could have ascertained the position of its conduits in the street; (2) that plats were available furnished by plaintiff on previous occasions to the City showing the location and depth of plaintiff's conduits, and that the City made no request for such plats; (3) that a custom prevailed whereby the City was accustomed to call for such plats before making excavations endangering the conduits, and the City in this case failed to make such request; (4) that the City withdrew any supervision over the workmen making the excavation, who thus had no guidance in avoiding injury to the conduits.

Plaintiff proved the amount of damage to the conduits, there being no evidence indicating that the amount claimed was not just and reasonable compensation for the admitted damage.

The City received notice of the break in the water line at 1:55, P. M. The valve men arrived in the vicinity of the break in the line at 2:15, P. M. They located its approximate location at 2:30, P. M. They "salted" the street to prevent freezing, and turned off the water in a flat building. The City maintenance crew were dispatched to the location at 3:00, P. M., and arrived at 3:40, P. M. The supervising foreman did not arrive until 4:30, P. M.

The waterline is located in McMillan Street, a main street, extending in a general east and west direction across the hills, just above the principal business district of the City. It is heavily traveled by street cars, busses, trucks, and automobiles. At the time work was commenced by the maintenance crew, traffic on the street was very heavy, and the men of the crew were compelled to work under great difficulties, being required to constantly take measures in order to permit passage of street cars. Pumps were used to dispose of the water constantly filling the excavation and the crew were unable for some time to locate the exact position of the break. The position of the City is that by reason of all these circumstances it was impossible for the City employees to use ordinary precaution to avoid striking the conduits, for as stated in the City's brief:

"The city employes were blocked by the street car tracks on the north side and by the telephone ducts on the south side. To shut off the escaping water, employes of the defendant had to dig where they did in order to get to the ferrule. It was impossible to avoid striking the telephone ducts because they were lying next to the surface of the street without a cushion of dirt, which ordinarily separates them from the base of the street paving. With water pouring out of the hole, and in the absence of a cushion of dirt, there was no possible way to see nor determine when the air hammer reached the telephone ducts."

The City is not an insurer against damage to the conduits. Nor, on the other hand, has it a right to ignore their existence, and even where required to make prompt repairs to a water line, proceed with no exercise of care for their safety. Both the conduits and water lines are lawfully situated beneath the pavement of the street. In **41 O. Jur, p. 120, Section 166,** "Waters & Waterworks", it is stated:

"It was stated in the preceding section that a municipality engaged in the operation of a waterworks system engages in a proprietary function. Therefore, such municipality is charged with the exercise of ordinary care, that is to say, such care as ordinarily prudent persons generally exercise under the same or similar circumstances. It follows then that a municipality is liable for negligence in the operation of its water system."

See, also: **Interstate Sash & Door Co. v. Cleveland, 148 Oh St, 325.**

The burden rested upon plaintiff to prove that the damage to its conduits was caused by the negligence of the City in making the excavation. An examination of the record can only lead to the conclusion that the City exercised no care of any description in making the excavation, but, on the contrary, proceeded with an entire disregard to possible injury to the conduits. As hereinbefore stated, the claim of the City is that by reason of the peculiar situation presented the employes of the City were required so to proceed. The evidence wholly fails to sustain the claim of the City that a sudden emergency was presented, requiring precipitate action. The time schedule hereinbefore noted, shows that from the time notice was given of the break until the damage was done, there was ample opportunity to ascertain the location of the conduits and to adopt reasonable measures to prevent injury to the conduits.

It is not overlooked that we are here presented with a situation where the trial court has overridden the verdict of the jury in favor of the defendant. In effect, the situation is the same as if the trial court had sustained a motion for an instructed verdict. **J. & F. Harig Co. v. Cincinnati, 61 Oh Ap, 314.** Nor is the rule requiring favorable construction overlooked.

In **Wilkeson, Admr. v. Erskine & Son, 145 Oh St, 218, at p. 228** of the opinion **Section 183, "Trial", 39 O. Jur., 802.** is quoted with approval. In this section of the subject of "Trial" it is stated:

"The trial judge, in ruling upon a motion, to direct a verdict or for a nonsuit on the evidence introduced, must not only assume the truth of the evidence in behalf of the party against whom the motion is directed, but must construe the evidence most strongly in favor of that party, or, as it is some times expressed, must give the most favorable interpretation or intendment in his behalf, and adopt the view most favorable to his contention, or consider it in the light most favorable to him, of which such evidence is susceptible. To this end the trial judge should give the party, against whom the motion is made, the benefit of all reasonable inferences that can be drawn from the evidence offered and consider as proved such reasonable inferences favorable to him as the facts proved warrant—as are deducible from the evidence given—without carrying the inferences to an illogical conclusion. In other words, the evidence must be construed favorably to the submission of the case to the jury, and the trial judge should indulge in every possible consideration in favor of such submission.

"Formerly, if there could be said to be a scintilla of evidence in favor of such party on all material issues, the court had to submit the case to the jury. Under the present rule, however, if, after giving the evidence such favorable construction, reasonable minds can reasonably come to but one conclusion and that conclusion is adverse to the party against whom the motion is made, the judge should direct a verdict against him."

It is by these requirements the action of the trial court must be tested. When so tested, the record is conclusive against the existence of any evidence showing even the slightest degree of care. Even if the incidents involved in the operation by the City could be considered as an "emergency" the evidence does not sustain the presence of the appropriate degree of care required under such circumstances. As before stated, the position of the City is that the situation presented eliminated any requirement for care of any degree or description. The presence of an emergency does not eliminate the necessity for **appropriate** care. In **29 O. Jur., p. 424, Section 35, "Negligence"**, it is stated:

"The general rule is that one who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence. An emergency, however, does not change the requirement of ordinary care. A person confronted with a sudden emergency is required to use only that degree of care which an ordinarily prudent person would exercise under the same or similar circumstancs. In other words, he is not held to the exercise of such good judgment as might be required where opportunity existed for reflection and choice of action. In cases of emergency, one is not held to a nicety and delicacy of judgment. The circumstances of the emergency and the apparent danger must be taken into consideration in determining the question of the exercise of ordinary care, or the question of contributory negligence. There is an ex post facto wisdom, which, after everything has been done without success, can suggest that something else should have been attempted, but this is a sagacity much more astute than ordinary human foresight, and can hardly furnish a fair rule by which to determine the propriety of what has been done in good faith, and with judgment exercised under the best light afforded."

It is stated in the Restatement of the Law of Torts, Section 296:

"In determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency not caused by his own tortious conduct which requires rapid decision is a factor in determining the reasonable character of his choice of action."

The record shows the existence of no situation described in these definitions of an emergency.

See, also: 38 Am. Jur., p. 686, "Negligence," Section 41.

Two other contentions of the City require consideration. It is claimed the Court erred in its charge to the jury. Any error occurring in the charge to the jury is immaterial to this presentation, which is concerned with the correctness of the action of the trial court in rendering judgment notwithstanding a verdict for the defendant. The verdict is not here under consideration.

Upon the claim of the rejection of evidence tendered by the City, it can easily be seen that if proper evidence was excluded which would have shown some care on the part of the City, a judgment predicated upon the absence of such evidence, if sustained, would render the defendant helpless to raise the question of such error, if not here considered, in passing upon the validity of the judgment non obstante veredicto.

It is the claim of the defendant that it was prevented from introducing evidence tending to show that it was confronted with an emergency in making the excavation in search of the break in the water lines. An examination of the record discloses that the only evidence so excluded was the answers to questions which called for a conclusion of the witness as to the existence of an emergency. The defendant was in no way prevented from proving what occurred. It was only refused the right to introduce the answer to the categorical question: "Was this an emergency?" This could have been no more than the opinion of the witness. The court in no way limited the City in establishing the facts.

The City also claims error in the admission of evidence. The basis upon which the judgment is sustained is the **absence** of any evidence, either in that introduced by plaintiff or defendant, showing the exercise of the slightest degree of care on the part of the City to prevent the injury to plaintiff's conduits.

Nothing appears in the record indicating that the admission of any evidence offered by the plaintiff had the effect

of preventing the defendant from proof of care in any respect.

It thus appears from the record that the plaintiff fully sustained the burden resting upon it to prove negligence, for the record conclusively shows that the City exercised no care of any description or degree in making the excavation. This conclusion is reached after giving the defendant the benefit of every favorable interpretation of the evidence.

As to the amount of the judgment, there was not the slightest attempt to rebut the evidence showing the extent of the plaintiff's damages, and the reasonable cost of repairing the damage caused by the City's total lack of care. The evidence of plaintiff is also unimpeached, showing the action of plaintiff in minimizing its loss.

There being no evidence in any way raising a question as to the amount found by the Court to be the reasonable cost required to compensate plaintiff for the damage, the Court was fully justified in rendering judgment for such undisputed sum.

The judgment should be affirmed.

ROSS & HILDEBRANT, JJ, concur in syllabus, opinion & judgment.

MATTHEWS, PJ, dissents in separate memorandum.

MATTHEWS, PJ., (DISSENTING):

I have no hesitancy in concurring in paragraphs one, two, three, and four of the syllabus, and in the statement of law contained in the opinion. My dissent is from the action of the court in treating its conclusion from conflicting evidence that defendant was negligent as though such negligence had been found by the trier of the issues of fact. Just the contrary is the fact.

In two places in the opinion are found statements indicating that the defendant admitted that it had not exercised ordinary or reasonable care. Of course if the defendant had made any such admission, the court would have been fully justified in instructing a verdict for the plaintiff for such damages as were proven, but even that would not justify taking from the jury the right to assess the damages. However, there was no such admission. On the contrary, the whole effort of the defendant was directed toward showing that it had exercised due care and that the damage to the defendant's property occurred notwithstanding such care. The defendant placed four witnesses on the stand who testified to the circumstances, under which the work was done and how it had

been done, and why it was done in that way. It is true that the plaintiff with that "ex post facto wisdom" suggests certain things that should have been done, but quoting again from the opinion those things "can hardly furnish a fair rule by which to determine the propriety of what has been done." Certainly, the ex post facto views of the plaintiff should not be hardened into a rule of law by which to judge the defendant's conduct.

This case is not predicated upon the doing or failing to do a specific act which the law has declared to be negligent. It is not claimed that any act or failure to act was negligence per se. It is the ordinary case of a claim of failure to exercise ordinary care. In 28 Am. Jur., 1051, it is said:

"Ordinary care is that degree of care which a person of reasonable prudence would exercise under a given state of facts. Before legal liability for conceded damages can be imposed upon a defendant, the court must inquire and determine the character of duty which the law, under the facts, imposed upon the defendant as the basis of liability. As a result, the legal duty or the standard of human conduct under any given circumstances must be declared by the court as a preliminary to the submission of the case to the jury. Whether, under proper instructions, the standard of care which should have been exercised was exercised is a question of fact for the jury to be determined from their knowledge of mankind and of how persons of reasonable prudence usually deport themselves in relation to their surroundings. Possessed of a yardstick with which the law presumes them to be familiar—the reasonably prudent man—the jury apply it to the conduct in question and determine whether it measures up to that standard."

It is for the jury and not for the court to apply the yardstick and to determine the credibility of the witnesses.

In the same volume (38 Am. Jur.) at 1041, it is also stated: "Generally whether a particular act constitutes negligence is a mixed question of law for the court and fact for the jury, and negligence cases in which a non-suit may be allowed or a verdict directed are exceptional." If directing a nonsuit is the exception in such cases, certainly, directing a verdict or entering a judgment for the plaintiff upon whom the burden of proof rests should be rare indeed.

In addition to deciding the issue of negligence, the court decided the issue of damages and assessed the full amount claimed against the defendant as though the defendant had

conceded the amount to be correct. There was no such admission. The jury was under no duty to accept the testimony of the plaintiff's witnesses as to the extent of the damage.

For these reasons, I dissent from the conclusion reached by my associates. In my opinion, this judgment should be reversed and the cause remanded for further proceedings according to law.